**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAEQUAN BROWN-JORDAN,** | : | **CIVIL ACTION** |
| ***Plaintiff,*** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **C/O D. SMITH, *et al.*,** | : | **NO. 26-CV-6710** |
| ***Defendants.*** | : | |

**MEMORANDUM**

**KENNEY, J.** **OCTOBER 20, 2026**

*Pro se* Plaintiff Daequan Brown-Jordan ("Brown-Jordan") brings this civil action pursuant to 42 U.S.C. § 1983, naming as Defendants the City of Philadelphia, the Philadelphia Department of Prisons (the "PDP"), and numerous employees of the PDP. ECF No. 2. Brown-Jordan also seeks leave to proceed *in forma pauperis*. ECF No. 1. For the following reasons, the Court will **GRANT** Brown-Jordan's Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 1) and **DISMISS** the Complaint (ECF No. 2) in part, with leave to amend.

## I. FACTUAL ALLEGATIONS[1]

Brown-Jordan alleges that on July 21, 2026, while he housed at the Riverside Correctional Facility ("RCF"), he was "let out for recreation" and when he asked to use the phone he was refused by three corrections officers, and "the jail also took [his] commissary." ECF No. 2 ("Compl.") at 2–3. When his recreation time was up, Brown-Jordan refused to return to his cell until he got a phone call. *Id.* at 3. Defendants Sgt. Malkowski and C/Os D. Smith, Miro, and

---

[1] The facts set forth in this Memorandum are taken from Brown-Jordan's Complaint (ECF No. 2). The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system. Grammar, spelling, and punctuation errors are cleaned up where necessary. Additionally, the Court includes facts reflected in publicly available state court records, of which this Court may take judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

Munford "came to the unit and asked [Brown-Jordan] to go to his cell and [he] asked to use the phone and they told [him] no. Then Lt. Wilson came with C/O Hollis [and] the same thing happen[ed]." *Id.* Lt. Wilson then "told C/O D. Smith and C/O Munford to deploy their PDP issued OC spray. The two officers then deployed their OC spray to [Brown-Jordan's] face and neck area. At the time they sprayed [him, Brown-Jordan] was sitting down and handcuffed." *Id.*

Brown-Jordan has attached additional pages to his form Complaint that contain further factual allegations. *See id.* at 9–13. First, he alleges that "[ever] since [he] started to write grievances inside the jail it seems like the workers started targeting [him]." *Id.* at 9. Brown-Jordan states that "they came and did a shakedown and tried to charge [him] with destroying property on [July 14, 2026]." *Id.* Brown-Jordan also alleges that "D. Smith charge[d] [him] with interfering with the taking of a count and sent [him] to the hole," and that he "got three write ups in one week[,] all by the same officer," D. Smith, "the one who sprayed [Brown-Jordan] with the pepper spray." *Id.*

Brown-Jordan's attached pages then include a series of conclusory statements, mentioning no specific defendant, about: medical treatment on July 16, 2026; invasion of privacy during a "random shake down" and strip search on June 28, 2026; having not been given underwear, t-shirts, socks, or a change of clothes from "June 5 to July 2"; "discriminat[ion] against Muslims"; service of meals inside cells instead of in the dayroom; compensation for a job he held during an unspecified time after which he "beat [his] case so the jail is suppose[d] to compensate [him] as a person and not an inmate"; a lack of recreation time at some unspecified point when he was detained in another PDP facility; and having been over-detained after a conviction on June 9, 2023. *Id.* at 9–13. He seeks damages and various forms of injunctive relief. *Id.* at 5–6.

## II. STANDARD OF REVIEW

Because it appears that Brown-Jordan is incapable of paying the fees to commence this civil action, the Court will grant leave to proceed *in forma pauperis*.[2] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss Brown-Jordan's Complaint if it fails to state a claim. The Court applies the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), that is, whether a complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *see also Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At the screening stage, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in the plaintiff's favor, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *See Iqbal*, 556 U.S. at 678; *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue.").

As Brown-Jordan is proceeding *pro se*, the Court construes the allegations in the Complaint "liberally." *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala*, 704 F.3d at 244). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting

[2] Because Brown-Jordan commenced this case while incarcerated, he will be obligated to pay the full filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

*Mala*, 704 F.3d at 245). An unrepresented litigant "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.* (quoting *Mala*, 704 F.3d at 245).

In that regard, a complaint may be dismissed for failing to comply with Federal Rule of Civil Procedure 8. *Garrett v. Wexford Health*, 938 F.3d 69, 91 (3d Cir. 2019). Rule 8 requires a pleading to include a "short and plain statement showing that the pleader is entitled to relief," as well as a statement of the court's jurisdiction and a demand for the relief sought. Fed. R. Civ. P. 8(a). In determining whether a pleading meets Rule 8's "plain" statement requirement, the Court should "ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by [the named] defendants' in regard to the plaintiff's claims." *Garrett*, 938 F.3d at 93 (citation omitted). "Naturally, a pleading that is so 'vague or ambiguous' that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8." *Id.* (citation omitted). The important consideration for the Court is whether, "a pro se complaint's language . . . presents cognizable legal claims to which a defendant can respond on the merits." *Id.* at 94 (collecting cases).

## III. <u>DISCUSSION</u>

Brown-Jordan brings claims for violations of his constitutional rights. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "Section 1983 provides a civil remedy for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Halsey v. Pfeiffer*, 750 F.3d 273, 290 (3d Cir. 2014) (quoting 42 U.S.C. § 1983); *see also Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (explaining § 1983 "is not itself a source of substantive rights, but [rather] a method for vindicating federal rights elsewhere conferred." (quoting *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979))). To state a claim under § 1983, a plaintiff must demonstrate "that the defendants, acting under color of law,

violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Karns v. Shanahan*, 879 F.3d 504, 520 (3d Cir. 2018) (quoting *Elmore,* 399 F.3d at 281); *see also Halsey*, 750 F.3d at 290 ("To state a claim under section 1983, a plaintiff must demonstrate that 'some person has deprived him of a federal right . . . [and] that the person who has deprived him of that right acted under color of state or territorial law.'" (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980))). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

**A. Excessive Force**

Brown-Jordan first alleges that C/O D. Smith and C/O Munford, acting on the orders of Lt. Wilson, deployed OC spray to his face and neck while he was "sitting down and handcuffed." Compl. at 3. The Court understands this as a claim for excessive force and that Brown-Jordan was a pretrial detainee at the time of these events.

Excessive force claims brought by pretrial detainees are analyzed under the Fourteenth Amendment's Due Process Clause. *See Kingsley v. Hendrickson*, 576 U.S. 389, 400–01 (2015); *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 193–94 (3d Cir. 2021). For a pretrial detainee to state a due process violation based on excessive force, he must allege plausibly that "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 at 396–97. The following circumstances "may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* at 397 (citation omitted). Whether

unreasonable force has been used against a detainee requires "careful attention to the facts and circumstances of each particular case." *Jacobs*, 8 F.4th at 194 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Courts should analyze "these circumstances 'from the perspective of a reasonable officer on the scene'" while keeping in mind that decisions about safety and order require the expertise of correctional officers, "who must have substantial discretion to devise reasonable solutions to the problems they face." *Id.* at 195 (citations omitted).

Brown-Jordan alleges that he was subjected to OC spray by Defendants Smith and Munford on the orders of Defendant Wilson while he was sitting down, handcuffed, and refusing to return to his cell until he was allowed to use the phone. These allegations are sufficient to state a claim to relief against Defendants Wilson, Smith, and Munford for excessive force. This is not a decision on the merits. Brown-Jordan's allegations may again be subject to scrutiny upon the filing of a motion to dismiss.

**B. Retaliation**

However, Brown-Jordan appears also to allege that Defendant Smith's actions were in retaliation for past grievances he filed. *See* Compl. at 9. Although a prisoner has no constitutional right to a grievance process, *see Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citation omitted), a prisoner can state a claim based on retaliation for filing a grievance. *See Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (*per curiam*) (holding that a prisoner's filing of a grievance "is constitutionally protected conduct"); *Davis v. Goord*, 320 F.3d 346, 352–53 (2d Cir. 2003)); *Peterson v. Franrak*, No. CV 25-4538, 2025 WL 3485825, at *5 (E.D. Pa. Dec. 4, 2025). In order to state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in "constitutionally protected conduct"; (2) he suffered "an adverse action . . . sufficient to deter a person of ordinary firmness from exercising his constitutional rights"; and

(3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*).

"An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than *de minimis*.'" *Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016) (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)) (alterations in original). For example, "being placed in lockdown, being moved to restricted housing, and being issued misconduct charges are more than '*de minimis*' adverse actions[.]" *See Palmore v. Hornberger*, 813 F. App'x 68, 70 (3d Cir. 2020) (*per curiam*) (quoting *McKee*, 436 F.3d at 170); *see also Mitchell*, 318 F.3d at 530–31 ("Mitchell's allegation that he was falsely charged with misconduct in retaliation for filing complaints against Officer Wilson implicates conduct protected by the First Amendment." (citation omitted)); *Watson*, 834 F.3d at 423 (concluding that a prisoner "clearly suffered an adverse consequence when [an official] charged him with a Class 1 misconduct"); *Robinson v. Palco*, No. 21-2987, 2022 WL 3009746, at *3 (3d Cir. July 29, 2022) (*per curiam*) (same); *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) (holding that the termination of prison employment constitutes adverse action for retaliation purposes).

The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation. *See Watson*, 834 F.3d at 422. For example, allegations of "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link may be sufficient to allege a causal link." *Id.* at 424 (citation omitted). However, "the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." *Id.* (citation

omitted). Moreover, causation, like any other fact, can be pled plausibly from the "record as a whole." *Id*. (citation omitted) But "where the temporal proximity is not so close as to be 'unduly suggestive,'" the appropriate test is "timing plus other evidence." *Id.* (citation omitted)

Brown-Jordan alleges that C/O D. Smith wrote him up three times in one week, and suggests that these write-ups, and the subsequent OC spray incident, were in retaliation for his filing of past grievances. *See* Comp. at 9. However, Brown-Jordan's pleading is not clear as to the content of the prior grievances, why Defendant Smith would have been aware of them, or when these prior write-ups occurred in relation to the OC spray incident on July 21, 2026. Accordingly, to the extent that he asserts that Smith or any other Defendant retaliated against him, he fails to state a claim to relief. However, Brown-Jordan will be provided a chance to file an amended complaint and cure this defect by pleading more facts in support of his retaliation claim.

**C. Conclusory Allegations, Pleading, and Misjoinder**

Although Brown-Jordan has pleaded a plausible excessive force claim and will be granted leave to amend as to his retaliation claim for the reasons discussed above, the remainder of Brown-Jordan's Complaint is "best described as a 'kitchen sink' or 'shotgun' complaint because it essentially seeks to bring 'every conceivable claim against every conceivable defendant.'" *Anderson v. First Premier Bank*, No. CV 25-5502, 2025 WL 3214776, at *6 (E.D. Pa. Nov. 17, 2025) (quoting *Talley v. Harper*, No. CV 14-1411, 2017 WL 413069, at *2 (W.D. Pa. Jan. 31, 2017)). The bulk of his attachment to the form Complaint describes in conclusory fashion a series of events that are unrelated to the alleged excessive force incident on July 21, 2026, or to any prior dispute he had with C/O D. Smith. *See* Compl. at 9–12. These unrelated, conclusory allegations

concern medical treatment, religious freedom, meal service, clothing, and recreation time.[3] *See generally id.* All of these allegations are conclusory and so fail to state a claim to relief. *See Iqbal*, 556 U.S. at 678. The allegations also do not state the personal involvement of any of the individual named Defendants, instead referring generally to "the Jail." *See Garrett*, 938 F.3d at 93 (stating that a pleading must "'identif[y] discrete defendants and the actions taken by these defendants' in regard to the plaintiff's claims" to state a claim to relief (citation omitted)); *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (quoting *Iqbal*, 556 U.S. at 677)); *see also Miller v. Curran-Fromhold Corr. Facility*, No. 13-7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (explaining a that a jail is not a "person" under § 1983 (citing *Mitchell v. Chester Cnty. Farms Prison*, 426 F. Supp. 271 (E.D. Pa. 1976))). And Brown-Jordan's sparse allegations do not support a claim for municipal liability by alleging the existence of a policy or custom tied to any injury. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) ("A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." (citation omitted)); *Peterson*, 2025 WL 3485825, at *6 "([C]orrections officials cannot be held liable for failing to conform to procedures outlined in inmate handbooks and other internal prison procedures." (citations omitted)); *Curry v. McCann*, No. 18-5444, 2019 WL 77441, at *7 n.7 (E.D. Pa. Jan. 2, 2019) ("[A]

[3] In his Complaint, Brown-Jordan appears to lodge claims and seek relief on behalf of not only himself, but "every person who comes in the jail" and "the whole jail." Compl. at 6. Although Brown-Jordan may represent himself *pro se*, a non-attorney may not represent other parties in federal court. *See Murray ex rel. Purnell v. City of Phila.*, 901 F.3d 169, 170 (3d Cir. 2018); *cf. Sinclair v. Citi Mortg., Inc.*, 519 F. App'x 737, 739 (3d Cir. 2013) (*per curiam*) (explaining that a *pro se* litigant who is not an attorney may not proceed with a case as a class action because he may not represent the interests of other litigants) (citations omitted).

prison's departure from the policies and procedures outlined in the facility's handbook does not, in and of itself, amount to a constitutional violation actionable under § 1983." (citation omitted)).

Moreover, courts have "repeatedly criticized" kitchen-sink pleading as "troublesome for many reasons," including that it "harms the plaintiff who brings it," because any "genuine dispute becomes almost impossible to discern when it is buried in pages of various allegations[,]" some of which may not rise to the level of a constitutional claim. *Anderson*, 2025 WL 3214776, at *6 (internal quotations and citations omitted). Federal Rule of Civil Procedure 18(a) states that "[a] party asserting a claim, . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Federal Rule of Civil Procedure 20 allows a plaintiff to join multiple defendants in one action if: (a) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (b) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20. "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *Un. Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

"But this application, however liberal, is not a license to join unrelated claims and defendants in one lawsuit." *Pew v. Little*, No. 22-1488, 2024 WL 967823, at *2 (E.D. Pa. March 6, 2024) (quoting *McKinney v. Prosecutor's Off.*, No. CV 13-2553, 2014 WL 2574414, at *14 (D.N.J. June 4, 2014)). "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *Williams v. Miller*, No. 25-6293, 2026 WL 209815, at *8 n.12 (E.D. Pa. Jan. 27, 2026) (quoting *Gorrio v. Terra*, No.

CV 23-4366, 2023 WL 8373167, at *6 (E.D. Pa. Dec. 5, 2023)). Indeed, courts "have frowned on prisoners' attempts to lump together their multifarious grievances about life in a single prison." *McKinney*, 2014 WL 2574414, at *15 (citation omitted). To remedy a misjoinder, a Court may "add or drop a party" or sever any claims. Fed. R. Civ. P. 21.

It may be that Brown-Jordan intended to lodge standalone claims based on these various conclusory allegations and, if so, he fails to state a claim to relief. Affording the Complaint liberal construction, the Court has also considered whether these allegations merely describe the events underlying his past grievances, which in turn led to purported retaliation against him. If so, he still does not plead sufficient facts about when he filed any grievances on those issues and why any of the Defendants responsible for the OC spray incident or other acts of retaliation would have known about them. *See Watson*, 834 F.3d at 424; *Mitchell*, 318 F.3d at 530.

Accordingly, Brown-Jordan's Complaint will be dismissed to the extent it raises any claims other than excessive force against Defendants Wilson, Smith, and Munford. As discussed above, Brown-Jordan will be given leave to file an amended Complaint. If he chooses to file an amended complaint, that will become the operative pleading. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) ("If a plaintiff amends [his] complaint, the new pleading 'supersedes' the old one: The 'original pleading no longer performs any function in the case.'" (citation omitted)). However, if he chooses to file an amended complaint, Brown-Jordan should also keep in mind that if he again attempts to join unrelated claims against unrelated parties, the Court may sever those claims into one or more new cases. *See Graudins v. Retro Fitness, LLC*, 921 F. Supp. 2d 456, 467 (E.D. Pa. 2013) ("The Federal Rules of Civil Procedure give district courts broad discretion in deciding whether to sever a case by way of severing parties or claims." (citation omitted)). Nothing

in this Memorandum or its accompanying Order prevents Brown-Jordan from bringing other cases based on other events.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Brown-Jordan leave to proceed *in forma pauperis* and dismiss his Complaint in part, pursuant to 28 U.S.C. § 1915. Brown-Jordan may file an amended complaint as discussed above. If he does not file an amended complaint, the Court will enter further orders as necessary regarding service of process as to his remaining claim for excessive force against Defendants Lt. Wilson, C/O D. Smith, and C/O Munford. An order follows, which contains more information about amendment.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**